UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN BRADLEY BROOKER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | Case No. 13-cv-05459-WHO   (WHO)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 16 |

## INTRODUCTION

In February 2008, plaintiff Justin Brooker applied for and was awarded Supplemental Security Income ("SSI") benefits under title XVI of the Social Security Act. Brooker has been unable to work gainfully as a result of severe intellectual, physical, and behavioral impairments. His SSI benefits were awarded retroactive to the date of his February 2008 SSI application. However, Brooker seeks additional benefits, arguing that his February 2008 application should be retroactive to March 1999, when he was admitted to hospital for a fall from his bike. Brooker contends that his hospital admission papers serve as a "protective filing" pursuant to the regulations governing SSI benefits.

The Administrative Law Judge ("ALJ") rejected this argument, determining that Brooker relied on inapplicable regulations and failed to satisfy the requirements of the regulations that did apply. Brooker appealed, and each party has moved for summary judgment. Brooker relies on inapplicable or improperly interpreted regulations, and he does nothing to counter the substantial evidence supporting the ALJ's conclusions. Accordingly, plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.

**BACKGROUND**

Brooker was born on March 3, 1985. Administrative Record ("A.R.") 53. From October 1999 until January 2002, Brooker received SSI benefits from the Social Security Administration ("SSA") under the eligibility standards for children with disabilities. A.R. 12. In January 2002, it was determined that Brooker no longer met the applicable SSI requirements, and benefits were terminated.[1] *Id.*

On February 26, 2008, Brooker filed an application for SSI benefits under the adult eligibility standards on the basis of his ongoing impairments.[2] *Id.*; A.R. 53–59. He sought these benefits retroactive to March 20, 1999, the date he was admitted to the emergency room for injuries to his wrist and ribs related to a fall from his bike. A.R. 12; A.R. 104–06. As Brooker was a minor at the time of his hospital admission, his grandmother, Lauretta Dalerio, signed the admission papers. A.R. 104–06. Brooker contends that these papers qualify as a written statement establishing the effective filing date of his 2008 SSI application. A.R. 12–13.

On March 18, 2011, the ALJ determined that Brooker was disabled and entitled to SSI benefits, but only from February 26, 2008, the date he submitted his SSI application. A.R. 12. Brooker requested reconsideration on the protective filing issue, arguing that the hospital admission papers established an earlier filing date. *Id.* On February 16, 2012, the ALJ rejected that argument and affirmed the payment of benefits retroactive only to February 2008. A.R. 9–13. Brooker requested review from the Appeals Council. A.R. 8. On November 1, 2013, the Appeals Council denied the request. A.R. 3–6. Brooker filed this timely appeal on November 25, 2013.

**LEGAL STANDARD**

Under 42 U.S.C. § 405(g), a court reviews an ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991) ("We

---

[1] The ALJ noted that Brooker ceased receiving benefits in 2002 "apparently based on income deemed to him," and not as a result of medical improvement or reevaluation under adult disability standards. A.R. 77.

[2] The ALJ found that Brooker has borderline intellectual functioning, a reading disorder, a conduct disorder, difficulty maintaining social functioning, difficulty maintaining concentration, and a lengthy history of severe, persistent headaches. A.R. 77–78.

review the ALJ's determination . . . to determine whether it was supported by substantial evidence and whether it was based on the proper legal standard."). Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." *Saelee v. Chater*, 94 F.3d 520, 521–22 (9th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotations and citation omitted).

A court must review the record as a whole and consider adverse as well as supporting evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882 (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

The federal regulations governing SSA benefits are found at title 20, chapter III of the Code of Federal Regulations. Within this chapter, regulations are subdivided into parts, with specific parts governing benefits received pursuant to corresponding titles of the Social Security Act. Part 404 of the regulations governs Retirement, Survivors, and Disability Insurance ("RSDI") benefits received under title II of the Social Security Act.[3] Part 416 governs SSI benefits received under title XVI.[4] This elementary distinction eludes Brooker, who acknowledges that he sought and obtained SSI benefits pursuant to title XVI, yet relies on regulations from both part 404 and part 416. *See* Pl.'s Resp. 1, 3 and Pl.'s Mot. 1 (citing 20 C.F.R.

---

[3] Part 404 governs disability claims under title II of the Social Security Act for individuals "insured" under the Act by virtue of their contributions to the Social Security trust fund through the Social Security tax on their earnings, as well as to certain disabled dependents of insured individuals. *See* 20 C.F.R. § 404.1 ("The regulations in this part 404 . . . relate to the provisions of title II of the Social Security Act . . . .").

[4] Part 416 governs claims under title XVI of the Social Security Act for individuals who are blind, elderly, or completely disabled and demonstrating financial need. *See* 20 C.F.R. § 416.101 ("The regulations in this part 416 . . . relate to the provisions of title XVI of the Social Security Act . . . .").

3

1  §§ 404.630, 404.632, 416.340, 416.345, 416.350). Several of these regulations are irrelevant to
2  Brooker's appeal, and the remainder are misinterpreted or misapplied to the undisputed facts of
3  the case.

**I.   PART 416 GOVERNS BROOKER'S CLAIM, BUT IT DOES NOT SUPPORT AN EARLIER PROTECTIVE FILING DATE.**

The ALJ determined that the only regulations applying to Brooker's claim for title XVI benefits are the ones governing title XVI. A.R. 12 ("The relevant regulations are contained in 20 C.F.R. § 416.310, *et seq.*, not 20 C.F.R. § 404.630, *et seq.*, as proposed . . . ."); A.R. 13 (describing Brooker's argument as "[r]eliance on inapplicable law). The ALJ did not err.

**A.   The hospital admission papers do not establish a protective filing date under 20 C.F.R. § 416.340.**

Under 20 C.F.R. § 416.340, written statements — as opposed to a formal application — may establish a protective filing date for title XVI benefits if four conditions are met. First, the written statement must indicate "an intent to claim benefits." 20 C.F.R. § 416.340(a). Second, the written statement must be signed by the claimant or an appropriate representative. 20 C.F.R. § 416.340(b). Third, the claimant must file a formal application for benefits within 60 days after the SSA sends a notice so indicating. 20 C.F.R. § 416.340(c). Fourth, the claimant must be living at the time the application is filed. 20 C.F.R. § 416.340(d).

Here, as the ALJ found, the first requirement of the regulation is not satisfied. A.R. 13 ("To begin with, there is absolutely no evidence of an intent to apply for supplemental security income prior to the subsequent application upon which the claimant was awarded benefits."). Nothing in the hospital admission papers themselves indicates the requisite intent to claim SSI benefits. A.R. 104–06. Instead, Brooker relies entirely on Dalerio's testimony at the ALJ hearing, in February 2012, that she had intended to "seek benefits" by way of the hospital admission. A.R. 172. But this testimony conflicts with the record. The hospital admission occurred in March 1999. The SSI application for which retroactivity is sought was filed in February 2008. That leaves a nine-year interval between the purported "intent to claim benefits" and the actual manifestation of that intent. For over two years in that interval, Brooker was receiving title XVI

4

benefits as a child with disabilities. Substantial evidence supports the ALJ's finding, given the nine-year gap and the absence of anything in the papers filed when Dalerio sought Brooker's admission to the hospital that suggests that she intended to claim SSI benefits for him.[5]

Brooker contends that precedent exists for finding intent under similarly doubtful circumstances. Pl.'s Mot. 8 (citing *Wolchuck v. Bowen*, 871 F.2d 869, 872 (9th Cir. 1989)). In *Wolchuck*, the claimant sought father's insurance benefits retroactive to 1981, the date of his wife's death. *Wolchuck*, 871 F.2d at 870. The retroactive claim was denied by the SSA because the claimant had, in 1981, indicated in his separate application for a lump-sum death payment that he did not intend to seek father's insurance benefits. *Id.* The claimant's stated rationale was that he was then earning income from work and did not intend to retire. *Id.* However, the Ninth Circuit reversed the SSA's denial. It held that the claimant's statement indicated "doubtful intent to apply" as it rested on the claimant's mistaken belief about the negative impact of his employment earnings on benefits he could in fact have claimed. *Id.* at 873. This doubtful intent provided sufficient basis to award retroactive benefits. *Id.* at 877.

Brooker's case is distinguishable from *Wolchuck*. Here, there is no indication of intent — even doubtful intent — contemporaneous with the purported protective filing date. The only evidence of intent directly connected to the hospital admission arrived 13 years after the fact, in Dalerio's testimony before the ALJ. A.R. 172. This is not analogous to the *Wolchuck* claimant's indication, at the time he declined to seek benefits, that his actions were conditional on a mistaken interpretation of the benefit scheme. *Wolchuck*, 871 F.2d at 873. Brooker notes that Dalerio, like the claimant in *Wolchuck*, "had nothing to lose" by seeking benefits at the earliest possible date. Pl.'s Mot. 9. However, this irrelevant here as Dalerio does not claim — as the claimant did in

---

[5] In evaluating the 2008 application for SSI benefits, the ALJ also considered a request to reopen Brooker's record with respect to the termination of child disability benefits in 2002. A.R. 74. The ALJ rejected this request. A.R. 75 ("[T]he 2002 determination that the claimant no longer met the non-disability requirements for supplemental security income is not within the applicable reopening period . . . , and there is no evidence to warrant reopening that determination on any basis."). As the SSA notes, the decision to reopen the record is discretionary. Def.'s Mot. 4 n.2. The decision is therefore not subject to judicial review, except where the affected party is able to raise a "colorable constitutional claim of due process violation." *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008) (quoting *Udd v. Massanari*, 245 F.3d 1096, 1099). Brooker raises no such claim here.

*Wolchuck* — that she declined to seek benefits because she erroneously feared that doing so would have negative consequences. Rather, the evidence indicates that the 1999 hospital admission simply has no relationship to the 2008 claim for SSI.

Furthermore, there is no evidence to suggest that Brooker or a representative actually sent hospital admission papers to the SSA at any point prior to March 2011. A.R. 13. Pursuant to § 416.340, the protective filing date of written statements delivered to the SSA is "the date . . . received at a social security office." 20 C.F.R. § 416.340. For written statements mailed to the SSA, the protective filing date is "the date the statement was mailed to us as shown by a United States postmark." *Id.* As a result, even if the hospital admission papers otherwise satisfied the regulatory requirements to establish a protective filing date, that protective filing date would be no earlier than March 2011 — some three years after Brooker filed his SSI application.

Brooker does not deny that the hospital admission papers were sent only in March 2011, but instead argues that this is irrelevant. Pl.'s Mot. 8–11; Pl.'s Resp. 2–3. He cites the third condition for establishing a protective filing date under § 416.340. This condition requires that a claimant file an application within 60 days of SSA's notice that an application is required. 20 C.F.R. § 416.340(c). As Brooker notes, it is SSA's obligation to provide this "close-out" notice, and SSA's failure to do so results in "filing protection that will remain open indefinitely." SSA PROGRAM OPERATIONAL MANUAL SYSTEM, GN 00204.010(A)(5). He contends that because SSA failed to "serve" a close-out notice following his hospital admission, an application for benefits in his name remained open through 2011, retroactive to the date the admission papers were signed. *See* Pl.'s Resp. 3 ("The issue is whether a close-out notice was served on the claimant. It was not.").

This is a fundamental misreading of the applicable regulation. The SSA does treat failure to provide a close-out notice as providing an indefinitely valid protective filing date. However, this has no impact on the claimant's independent obligation to submit the written statement in the first place. *See* 20 C.F.R. § 416.340 ("We will use the date a written statement . . . is received at a social security office . . . ."); § 416.340(c) ("We will send the notice to the claimant, or where he or she is a minor or incompetent, to the person who gave us the written statement."). This is

6

1  common sense. If a claim is not made, there is no claimant. If a statement is not filed, it has no
2  filing date. Nothing in the regulation suggests that individuals may privately assert eligibility to
3  SSI, quietly accrue unclaimed benefits for untold years, then seek a retroactive lump-sum payout
4  at the moment of their choosing. *See generally Driver v. Heckler*, 779 F.2d 509, 511 (9th Cir.
5  1985) ("The filing of an application is a prerequisite to the entitlement to benefits.").

Brooker notes that "there is no time limit for sending" the written statement to the SSA. Pl.'s Mot. 10. That is true but irrelevant. There is no time limit on the written statement because it is only considered effective from the date it is postmarked or received. 20 C.F.R. § 416.340. Once postmarked or received, the written statement sets the time limit in motion. The SSA notifies the claimant of his or her obligation to file a formal application. 20 C.F.R. § 416.340(c). The protective filing date then remains valid for the following 60 days, after which it expires if an application for benefits has not been submitted. *Id.* Here, Brooker submitted his application on February 26, 2008. Three years later, he submitted what he claims to be a written statement establishing a protective filing date. This did nothing to bolster Brooker's claim for retroactive benefits, as it established — at best — a protective filing date entitling him to benefits for which he had already successfully applied.

**B. The hospital admission papers do not establish a protective filing date under 20 C.F.R. § 416.350 or 20 C.F.R. § 416.345.**

Under § 416.350, the SSA treats an application for title II benefits as an oral inquiry into SSI benefits.[6] 20 C.F.R. § 416.350(b). Under both § 416.350 and § 416.345, the SSA treats an

---

[6] 20 C.F.R. § 416.350 provides in full:
(a) When a person applies for benefits under title II (retirement, survivors, or disability benefits) we will explain the requirements for receiving SSI benefits and give the person a chance to file an application for them if —
    (1) The person is within 2 months of age 65 or older or it looks as if the person might qualify as a blind or disabled person, and
    (2) It is not clear that the person's title II benefits would prevent him or her from receiving SSI or any State supplementary benefits handled by the Social Security Administration.
(b) If the person applying for title II benefits does not file an application for SSI on a prescribed form when SSI is explained to him or her, we will treat his or her filing of an application for title II benefits as an oral inquiry about SSI, and the date of the title II application form may be used to establish the SSI application date if the requirements of § 416.345(d) and (e) are met.

7

oral inquiry into SSI benefits as establishing a protective filing date for those benefits.[7] Brooker contends that these two regulations indicate that his 1999 hospital admission papers establish a protective filing date for SSI benefits. Again, however, he misinterprets the regulations.

Under § 416.350, the SSA treats the "filing of an *application* for title II benefits" as an oral inquiry into SSI benefits. 20 C.F.R. § 416.350(b) (emphasis added). The SSA may then backdate an SSI award to "the date of the title II *application form*." *Id.* (emphasis added). However, Brooker's hospital admission papers are not an application for title II benefits. Even Brooker does not allege otherwise. He claims instead that the papers qualify as a written statement. Pl.'s Resp. 5. But a written statement is not an application. *See* 20 C.F.R. § 416.340(c) (providing that a written statement will create a protective filing date on the condition that "[a]n *application form . . .* is filed with us . . .") (emphasis added); *see generally Schweiker v. Hansen*, 450 U.S. 785, 790 (1981) ("Congress expressly provided in the Act that only one who 'has filed application' for benefits may receive them, and it delegated to [the Secretary of Health and Human Services] the task of providing by regulation the requisite manner of application.").

Similarly, Brooker fails to allege any evidence that would satisfy the basic elements of § 416.345. He does not indicate that an oral inquiry into SSI benefits took place. *See* 20 C.F.R. § 416.345(a). Nor does he indicate that an inquiry was directed to an SSA-designated office or official. *See* 20 C.F.R. § 416.345(c).

Brooker objects that the ALJ failed to fully consider his arguments with respect to §§

---

[7] 20 C.F.R. § 416.345 provides in relevant part:
We will use the date of an oral inquiry about SSI benefits as the filing date of an application for benefits only if the use of that date will result in your eligibility for additional benefits and the following requirements are met:
(a) The inquiry asks about the claimant's eligibility for SSI benefits.
(b) The inquiry is made by the claimant, the claimant's spouse, or a person who may sign an application on the claimant's behalf as described in § 416.315.
(c) The inquiry, whether in person or by telephone, is directed to an office or an official described in § 416.310(b).
(d) The claimant or a person on his or her behalf as described in § 416.315 files an application on a prescribed form within 60 days after the date of the notice we will send telling of the need to file an application. The notice will say that we will make an initial determination of eligibility for SSI benefits if an application form is filed within 60 days after the date of the notice. (We will send the notice to the claimant, or, where he or she is a minor or incompetent, to the person who made the inquiry.)
(e)(1) The claimant is alive when the application is filed on a prescribed form . . . .

1    416.345 and 416.350.  I disagree.  The ALJ's conclusions were concise but well-founded.  *See*

2    A.R. 13 ("There is no evidence that a prescribed application was filed at any time until October

3    1999 . . . .  There is no evidence that the claimant or any other person on behalf of the claimant

4    contacted the Social Security Administration . . . .").

## II. ALTHOUGH PART 404 DOES NOT GOVERN, IT WOULD NOT BE SATISFIED BY THE HOSPITAL ADMISSION PAPERS.

Brooker also relies heavily on 20 C.F.R. §§ 404.630 and 404.632 to justify his claim for retroactive benefits.  Although neither § 404.630 nor § 404.632 applies to Brooker's claim for title XVI benefits, it bears mentioning that Brooker's argument would be no more successful under these regulations than it is under § 416.340.[8]

Pursuant to § 404.630, the SSA uses the filing date of a written statement as the filing date for an RSDI application if four conditions are met.  As Brooker notes, these conditions are essentially identical to those found in § 416.340.[9]  Pl.'s Resp. 2.  For example, the written statement must still "indicate[] an intent to claim benefits.  20 C.F.R. § 404.630(a).  And it must still be "filed with" SSA, with the effective date set at the time of the statement's receipt or postmark.  20 C.F.R. §§ 404.630, 404.614.  The only substantial difference between the two regulations — the length of the application period following the close-out notice — is irrelevant here.  *See* 20 C.F.R. § 404.630(c); Pl.'s Resp. 2–3.  As a result, Brooker's hospital admission

---

[8] In multiple string citations, Brooker also refers to § 404.631 and § 408.340.  Pl.'s Mot. 1; Pl.'s Resp. 1, 9.  The former determines when the SSA will use written statements filed with the Railroad Retirement Board as filing dates for the purpose of RSDI benefits.  20 C.F.R. § 404.631.  The latter determines when the SSA will use written statements as filing dates for the purpose of benefits available to certain veterans of World War II.  20 C.F.R. § 408.340.  These provisions are inapplicable here.

[9] 20 C.F.R. § 404.630 provides in relevant part:
If a written statement, such as a letter, indicating your intent to claim benefits either for yourself or for another person is filed with us under the rules stated in § 404.614, we will use the filing date of the written statement as the filing date of the application, if all of the following requirements are met:
(a) The statement indicates an intent to claim benefits.
(b) The statement is signed by the [a specified person] . . . .
(c) The claimant files an application with us on an application form as described in § 404.611, or one is filed for the claimant by a person described in § 404.612, within 6 months after the date of a notice we will send advising of the need to file an application. We will send the notice to the claimant . . . .

9

papers fail to satisfy the requirements of § 404.630 for the same reasons they fail to satisfy the requirements of § 416.340:  They do not indicate the requisite "intent to claim benefits," 20 C.F.R. § 404.630(a), and Brooker does not allege that they were filed with the SSA at any point prior to March 2011.

Pursuant to § 404.632, the SSA will treat a statement "filed with a hospital" as a written statement under § 404.630.  Citing this regulation, Brooker argues that intent to claim benefits is irrelevant where the protective filing date is established through hospital documents.  Pl.'s Resp. 7 ("There is no requirement in 20 C.F.R. § 404.632 that Mrs. Dalerio include a statement of intent in the hospital document, and there is no requirement that she include or submit a separate document expressing that intent.  The hospital form alone satif[ies] the requirements of a [t]itle II benefits application . . . .").  This argument is directly contrary to the plain language of the regulation.  *See* 20 C.F.R. § 404.632 ("A statement filed with a hospital by you or some other person for you *requesting or indicating an intent to claim benefits* will be considered a written statement filed with us." (emphasis added)).  Brooker's interpretation would also yield absurd results.  Under his reading of the regulation, anyone admitted to hospital — at any time and for any reason — would spontaneously establish a protective filing date for SSA benefits of all kinds, irrespective of intent to claim.  Unless the SSA then obtained hospital admission records and preemptively issued close-out letters to all these individuals, their protective filing dates would last forever.  While the regulations implementing the Social Security Act are intended to be "unusually protective of claimants," *Bowen v. City of New York*, 476 U.S. 467, 480 (1986) (internal quotations omitted), one cannot read the regulations inconsistently with their text and to such peculiar ends.

## CONCLUSION

The ALJ's decision is both factually and legally well-founded.  Substantial evidence supports the conclusion that Brooker's hospital admission papers fail to satisfy the elements required to establish an earlier protective filing date for title XVI benefits.  Brooker's legal

arguments to the contrary are either inapplicable or incorrect. Plaintiff's motion for summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: August 6, 2014



WILLIAM H. ORRICK
United States District Judge